```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
JAMES G. PAULSEN, Regional Director of                      :
Region 29 of the National Labor Relations                   :
Board, for and on behalf of the NATIONAL                    :   MEMORANDUM
LABOR RELATIONS BOARD,                                      :   DECISION AND ORDER
                                                            :
                    Petitioner,                             :   16 Civ. 5338 (BMC)
                                                            :
        -against-                                           :
                                                            :
PRIMEFLIGHT AVIATION SERVICES, INC.,                        :
                                                            :
                    Respondent.                             :
----------------------------------------------------------- X
```

**COGAN,** District Judge.

Before me is the "emergency" motion of James G. Paulsen, the Regional Director of Region 29 of the National Labor Relations Board (the "NLRB" or the "Board"), made pursuant to Federal Rule of Civil Procedure 59(e), seeking to amend the Preliminary Injunction I entered against respondent PrimeFlight Aviation Services, Inc. ("PrimeFlight") relating to violations of the National Labor Relations Act ("NLRA"). I assume the parties' familiarity with the facts in this matter.

When I granted in part the NLRB's petition for a preliminary injunction under 29 U.S.C. § 160(j) of the NLRA, I tailored the preliminary injunction based on the evidence and arguments the parties presented to me in their papers and at oral argument. I found that the proposed preliminary injunction language that the NLRB submitted was too broad in that it essentially would have awarded petitioner complete and permanent relief to which it was not entitled given the "preliminary" nature of the relief sought. This was particularly the case as I had understood from the parties that they were appearing before an NLRB Administrative Law Judge one week

after oral argument in this matter. Therefore, in determining what was "just and proper" relief under § 160(j) of the NLRA, I determined that any injunction entered would need to be contingent on the outcome of the administrative proceeding.

I also determined that, given the temporary nature of the relief, the preliminary nature of the evidentiary showings, and the ongoing administrative proceeding, it was important to balance the interests of both parties. I determined that giving the NLRB all of what it demanded ignored any balance of interests and that the NLRB's demanded relief would impose on PrimeFlight unduly burdensome obligations and costs. Given these considerations, as well as recognizing that PrimeFlight's staffing needs were dictated by JetBlue's needs and wanting to avoid a situation where bargaining obligations would require PrimeFlight to pay for unnecessary staffing, I limited bargaining between PrimeFlight and the Service Employees International Union, Local 32BJ ("SEIU" or the "Union") to exclude negotiations over "minimum number of shifts per employee or minimum staffing levels per shift" (the "staffing limitation").

I also determined that it was not necessary to include the catch-all language that the NLRB proposed, which sought to enjoin PrimeFlight from "in any like or related manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them by Section 7 of the Act" (the "catch-all provision").[1] I saw no reason for this catch-all provision, which seemed to me to be surplusage.

Nothing in the NLRB's motion makes me believe I have committed error in either imposing the single staffing limitation or declining to include the catch-all provision.

---

[1] In the NLRB's moving brief, the NLRB appeared to seek the addition of only the language just quoted, but in its reply, the NLRB provided the following, broader proposed language: "Respondent PrimeFlight Aviation Services, Inc., its officers, agents, successors and assigns, shall cease and desist from refusing to bargain in good faith with the Union, or in any like or related manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them by Section 7 of the Act."

2

**LEGAL STANDARD**

Section 10(j) of the NLRA provides that the NLRB may petition the local district court "for appropriate temporary relief or restraining order" pending the Board's final adjudication of a charge of unfair labor practices. 29 U.S.C. § 160(j). Correspondingly, § 10(j) provides that a district court "shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper." Id. A preliminary injunction under § 10(j) is deemed to be "just and proper" when it is "necessary to prevent irreparable harm or to preserve the status quo." Hoffman ex rel. NLRB v. Inn Credible Caterers, Ltd., 247 F.3d 360, 368 (2d Cir. 2001). This standard is meant to "preserve[] traditional equitable principles governing injunctive relief," and a court should apply this standard "in the context of federal labor laws." Hoffman, 247 F.3d at 368.

Petitioner brings its motion pursuant to Federal Rule of Civil Procedure Rule 59(e) to amend the Preliminary Injunction issued in this matter.[2] Under Rule 59(e), a court may grant a motion to amend a judgment when either (1) "the moving party can demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court," or (2) the movant demonstrates "the need to correct a clear error or prevent manifest injustice." Johnson v. Cty. of Nassau, 82 F. Supp. 3d 533, 535 (E.D.N.Y. 2015) (internal

---

[2] Respondent argues that petitioner's motion is procedurally defective because Rule 59 is limited to judgments, and there was no judgment in this case. Accordingly, respondent argues that that the instant motion is properly construed as a motion for reconsideration made pursuant to Rule 6.3 of the Local Rules of this Court, which provides that no affidavits can be submitted in support of a motion for reconsideration without leave of the court. That is not quite right. Courts in this Circuit have determined that Rule 59(e) is an appropriate vehicle to amend a preliminary injunction because it is an appealable interlocutory order, see, e.g., Am. ORT, Inc. v. ORT Israel, No. 07 Civ. 2332, 2009 WL 233950, at *2 n. 2 (S.D.N.Y. Jan. 22, 2009); Chobani, LLC v. Dannon Co., Inc., No. 3:16-CV-30, 2016 WL 1664908, at *1 (N.D.N.Y. Apr. 26, 2016), and I will join those courts in finding the same. However, because I am denying petitioner's motion, respondent has not suffered any harm in not submitting a responding affidavit, and I do not see any need to put respondent to the burden of drafting one when petitioner's arguments are insufficient even when considering its additional affidavit.

3

quotation marks omitted).  Petitioner principally moves under the second scenario of the Rule 59(e) analysis, but advises in a footnote that it could move under the first scenario, as well. Petitioner fails to show that the facts merit an amended preliminary injunction under either scenario.

I.     **The Staffing Limitation Was Just and Proper**

The NLRB's main complaint with the staffing provision seems to be that it "forces the Union to concede to Respondent the sole discretion to determine shifts and staffing levels, which are vital terms and conditions of employment that must be determined through the collective bargaining process."  This statement is incorrect:  Both the Order and Preliminary Injunction explicitly cede discretion for staffing determinations to JetBlue.  See Memorandum Decision and Order ("PrimeFlight will determine the shifts and staffing levels when JetBlue provides notice of its staffing and shift needs"); Preliminary Injunction (the limitation is "so that PrimeFlight is able to assign shifts and employees commensurate with JetBlue's expressed employment needs").  As a practical matter, it is reasonable to give JetBlue the authority to determine its own staffing needs given that it is JetBlue that is running its airline.

The NLRB refuses to acknowledge that JetBlue's needs determine staffing levels, instead arguing that the Union should be able to bargain about staffing needs.  The NLRB is effectively arguing that JetBlue should not have authority to determine its own staffing requirements and that the Union has better information about JetBlue's needs than JetBlue itself.  This argument fails.  The staffing limitation appropriately gives staffing authority to JetBlue, which in turn provides that information to PrimeFlight.  The Union has no basis to determine staffing levels.

Petitioner also argues that "all or virtually all Union [collective bargaining agreements] contain provisions concerning hours and staffing levels" because of, among other things, the "frequent changes in the volume of work due to seasonality."  It is this fluctuation against which

4

I wanted to guard.  PrimeFlight should not have to pay for the same number of employees on Groundhog Day as it does in the days before Thanksgiving, and it seems unjust to me to permit the Union to dictate staffing levels over the needs of JetBlue to the unnecessary expense of PrimeFlight, at least for the temporary period that this injunction covers.

      Petitioner also unconvincingly argues that the staffing limitation constrains effective negotiation by the Union because staffing is inextricably linked to other terms, like wages and benefits, and "bargaining requires making compromises in one area to make gains in others." However, the staffing limitation does not impede effective bargaining on other terms, and I am not persuaded that the Union's inability to bargain for unnecessary staffing dooms all other terms of negotiation.  As PrimeFlight notes in its opposition, the Union and PrimeFlight may bargain about wages and benefits using historical norms and traditional fluctuations to determine specific classifications.  Such a suggestion seems reasonable to me as it permits bargaining over wages and benefits without prospectively requiring PrimeFlight to needlessly staff employees simply because the Union wants to set all prospective staffing levels.

      Respondent floats several alternative bargaining proposals, none of which petitioner acknowledges in its reply.  Instead, the NLRB categorically asserts that good faith bargaining is not possible because of the staffing limitation.  The NLRB's refusal to acknowledge the alternate bases for collective bargaining does not create irreparable harm.  The Union has the ability to bargain on behalf of the employees regarding a host of terms, including wages, benefits, grievance and arbitration procedures, contract length, seniority, union security clauses, strikes and lock outs, and management rights clauses, all of which can be negotiated without reference to staffing levels.

5

Petitioner next argues that my ability to fashion a preliminary injunction that is "just and proper" is limited by statutory language.  But none of the provisions and cases petitioner cites suggest that I am without discretion to balance the equities in the context of a preliminary injunction pending final outcome from an administrative agency.  In fact, the Circuit has been quite clear that equity should guide my analysis for a preliminary injunction under the NLRA.  See e.g. Silverman v. 40-41 Realty Associates, Inc., 668 F.2d 678, 680 (2d Cir. 1982) (holding that "general equitable principles apply in deciding the propriety of a temporary injunction issued under section 10(j)").

In support of this particular argument, petitioner accuses the staffing limitation of giving PrimeFlight a "license" "to refuse to bargain in good faith" under § 8(a)(5) of the NLRA, thereby undermining Congress's policy in passing the NLRA.  None of the cases it presents actually support the argument it is making.  The NLRB draws from case law holding that "where the legislature has clearly expressed its intent to cabin a court's discretion to fashion equitable remedies, the court must respect those limitations," Beck Chevrolet Co., Inc. v. General Motors LLC, 787 F.3d 663, 680 (2d Cir. 2015), and then cites a quotation from the NLRA's policy statement, excerpted without the context of the previous four paragraphs that outline the particular strife Congress was intending to remedy as between employees and employers.  What is conspicuously missing from petitioner's argument is a citation to any provision that cabins judicial discretion in considering what is just and proper for a preliminary injunction.  Instead, the NLRB cites to § 8(d), which deals with the general obligation to bargain collectively as between the employer and the union/employees, and again says nothing about the discretion of the court in granting a preliminary injunction under § 10(j).

The fact is that petitioner cannot point to any holding or statutory language that limits a court's ability to fashion a preliminary injunction. Congress did not limit a court's authority to tailor a preliminary injunction; instead, it provided courts with discretion to make determinations as they "deem[] just and proper." 29 U.S.C. § 160(j). In several cases, other courts, as well as this Court, have weighed the equities and fashioned preliminary injunctions that did not provide the NLRB with every aspect of the relief it sought because we found that giving the NLRB everything would inequitably tilt bargaining against the employer and provide the Union a windfall or an unfair advantage in negotiations. See, e.g., Paulsen v. Renaissance Equity Holdings, LLC, 849 F. Supp. 2d 335, 362 (E.D.N.Y. 2012) (declining to reinstate an expired contract and modifying the terms of the injunction rather than "issue injunctive relief that shifts all of the negotiating leverage to the Union"); Blyer v. One Stop Kosher Supermarket, Inc., 720 F. Supp. 2d 221, 228 (E.D.N.Y. 2010) (issuing injunction prohibiting the parties from implementing any collective bargaining agreement until the NLRB had issued a final ruling, noting that the NLRB's requested injunction "might also easily become, as a practical matter, permanent relief if it were to result in a collective bargaining agreement before the NLRB renders its decision," which "would go beyond the interim relief authorized by § 160(j)").

Not only has petitioner failed to show that there is any manifest injustice warranting reconsideration, but petitioner has also failed to highlight any clear error in the Memorandum Decision and Order or any controlling law that I did not consider in support of its argument that the staffing limitation is in error. Petitioner argues that H. K. Porter Co. v. NLRB, 397 U.S. 99, 90 S. Ct. 821 (1970), is controlling law that supports its proposition that both the NLRB and the courts cannot "directly or indirectly compel concessions or otherwise sit in judgment upon the

substantive terms of collective bargaining agreements." 397 U.S. at 106, 90 S. Ct. at 825. However, the language of H.K. Porter on which petitioner relies is inapposite for several reasons.

First, nowhere in the paragraph where that clause appears did the Supreme Court mention the courts. In fact, the entire opinion dealt with the authority of the NLRB to compel either a company or a union to agree to any substantive contractual provision of a collective-bargaining agreement. Petitioner simply drops "courts" into its proposition even though H.K. Porter did not include that. The only mention of the role of the courts pertained to the procedural posture: In H.K. Porter, the Court sat in review of a Board decision that the Court of Appeals affirmed. In that respect, the courts were implicated because the Court of Appeals should not have affirmed, but the crux of the argument related to an attempt by the NLRB to compel the employer's assent to certain terms in the collective-bargaining agreement.

Second, the Supreme Court discussed the legislative history of the NLRA as it pertained to examples of overreaching by the NLRB, not the courts. In fact, in discussing § 8(d), the Supreme Court recognized that "it remains clear that § 8(d) was an attempt by Congress to prevent the Board from controlling the settling of the terms of collective bargaining agreements." Id. (internal quotation marks omitted and emphasis added).

Finally, H.K. Porter did not deal with or at all consider the courts' role in awarding § 10(j) relief, nor did it at all discuss any form of interim, temporary, or preliminary relief; rather, it reviewed the NLRB's improper attempt to force an employer to assent to a term in the context of a permanent collective-bargaining agreement.

What is really happening here is that the NLRB is attempting to use § 10(j) to pressure PrimeFlight into an agreement under which it will pay union workers for time in which they are not working. I recognize that there are collective bargaining agreements that contain such terms.

8

And it may be that the final collective bargaining agreement reached between PrimeFlight and the Union will be one of them. But this is a § 10(j) injunction proceeding, and its purpose is to maintain the status quo, not to moot the proceedings that are before the Administrative Law Judge and which may be reviewed by the Second Circuit. Requiring PrimeFlight to pay for unworked hours is not a term that, in my view, would be "just and proper."

Accordingly, petitioner has not presented any controlling law or other law that I overlooked nor identified any clear error that warrants reconsideration under Rule 59(e).

## II. Excluding the Catch-All Provision Was Not Error

Petitioner's argument with respect to the catch-all provision is also unavailing. Without demonstrating any harm or violation by PrimeFlight (and thus no reason to require any additional relief), petitioner moves this Court to add in language that enjoins PrimeFlight from "in any like or related manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them by Section 7 of the Act," later revising its request to the Court in its reply to include language that PrimeFlight "cease and desist from refusing to bargain in good faith with the Union, or in any like or related manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them by Section 7 of the Act."

Petitioner argues that including the catch-all provision ensures that respondent will take its NLRA obligations seriously and discourages recidivism. Missing from this argument in petitioner's moving brief and reply is any indication that PrimeFlight is not taking its obligations seriously or is on the cusp of recidivism. Also missing from the reply is any indication that PrimeFlight has refused to bargain in good faith, apart from the NLRB's proposition that the staffing limitation makes good faith bargaining impossible, which I already rejected. From my review of the affidavit that I ordered PrimeFlight to file relating to its compliance with the Preliminary Injunction, it is clear that PrimeFlight is taking its obligations to this Court seriously.

9

I reject petitioner's argument that simply because other "courts routinely grant it" and add this language to their preliminary injunctions that there is any reason or merit to including it here. I also reject petitioner's argument that I should add the catch-all because adding in the language will not impose additional costs on PrimeFlight. Cost is not the analysis; the analysis is what is just and proper, and it is not just and proper to impose a broad, undefined obligation on PrimeFlight when there is no evidence nor even a suggestion that PrimeFlight's conduct requires such a broad injunction. For these reasons, the NLRB's motion is also denied with respect to amending the Preliminary Injunction to add the catch-all provision.

## CONCLUSION

For the reasons stated above, the NLRB's motion is denied.

**SO ORDERED.**

Digitally signed by Brian M. Cogan
U.S.D.J.

Dated: Brooklyn, New York
December 13, 2016